UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------------------X

TERRI REYNOLDS and LORRAINE OLIVER,　　　　　Civil Action No.: 18-cv-01418

　　　　　　　Plaintiffs,

　　-against-　　　　　　　　　　　　　　　　　　**COMPLAINT**

　　　　　　　　　　　　　　　　　　　　　**Plaintiffs  Demand a Jury Trial**

JERSEY CITY DEPARTMENT OF PUBLIC WORKS,
CITY OF JERSEY CITY, KIP SMITH,
SHELLA LANE and GERRARDO COPPOLA,

　　　　　　　Defendants.
-------------------------------------------------------------------X

　　　　Plaintiffs, TERRI REYNOLDS (hereinafter "REYNOLDS") and LORRAINE OLIVER (hereinafter "OLIVER"), appearing by their attorneys, AKIN LAW GROUP PLLC as and for their Complaint against the Defendants JERSEY CITY DEPARTMENT OF PUBLIC WORKS (hereinafter "JCDPW"), CITY OF JERSEY CITY (hereinafter "JERSEY CITY"), KIP SMITH (hereinafter "SMITH"), SHELLA LANE (hereinafter "LANE") and GERRARDO COPPOLA (hereinafter "COPPOLA) respectfully allege as follows:

## PRELIMINARY STATEMENT

1. The Defendants discriminated against Plaintiffs REYNOLDS and OLIVER based on their sex and further retaliated against the Plaintiff for complaining about the discrimination.

2. More specifically, this is an action for monetary damages, Defendants violated Plaintiffs' rights under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§2000e-2000e-17 et seq. as amended), by unlawfully discriminating against the Plaintiffs on the basis of their sex and by retaliating against the Plaintiffs for complaining about said discrimination, in violation of §704(a) of the Civil Rights Act of 1964, as amended.

3.  In addition, Defendants discriminated and retaliated against the Plaintiffs in further violation of New Jersey Law Against Discrimination N.J.S.A. 10:5-1 et seq.

### JURISDICTION AND VENUE

4.  The jurisdiction of this Court over this controversy is invoked pursuant to 28 U.S.C. §§1331 and 1343, as this action involves federal questions.

5.  The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over related claims brought under the New Jersey Law Against Discrimination and New Jersey State common law.

6.  In addition, this Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202.

7.  Plaintiff REYNOLDS duly filed a Charge of Discrimination (No. 524-2018-00092) with the United States Equal Employment Opportunity Commission.

8.  The EEOC issued Plaintiff REYNOLDS a Notice of Right to Sue dated December 11, 2017. (Exhibit A)

9.  Plaintiff OLIVER duly filed a Charge of Discrimination (No. 524-2018-00093) with the United States Equal Employment Opportunity Commission.

10. The EEOC issued Plaintiff OLIVER a Notice of Right to Sue dated November 15, 2017. (Exhibit B)

11. Venue is appropriate under 28 U.S.C. § 1391 (b) and (c) (Substantial Part of the Events and Contacts), as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, the Defendants regularly conducts business in this district and the Defendant is subject to personal jurisdiction in this district.

### PARTIES

12. That at all the times hereinafter mentioned, Plaintiff REYNOLDS was and still is a resident of

the State of New Jersey, County of Hudson.

13. That at all the times hereinafter mentioned, Plaintiff OLIVER was and still is a resident of the State of New Jersey, County of Hudson.

14. That at all the times hereinafter mentioned, the Defendant JCDPW was and is municipal agency operating under the municipality of the City of Jersey City, organized and existing by virtue of the laws of the state of New Jersey.

15. That at all the times hereinafter mentioned, the Defendant Jersey City was and is a unit of local government authorized under Title 40A of the New Jersey Statutes to conduct business on behalf of the municipality throughout the State of New Jersey.

16. That at all times hereinafter mentioned, Defendant LANE, is an individual and resident of the State of New Jersey.

17. That at all times hereinafter mentioned, Defendant SMITH, is an individual and resident of the State of New Jersey.

18. That at all times hereinafter mentioned, Defendant COPPOLA, is an individual and resident of the State of New Jersey.

19. That at all times hereinafter mentioned, Defendant JCDPW maintains offices located at 13 - 15 Linden Avenue East, Suite 200, Jersey City, New Jersey 07305.

20. That at all times hereinafter mentioned, Defendant JERSEY CITY maintains offices located at 280 Grove Street, Jersey City, New Jersey 07302.

21. That at all times hereinafter mentioned, Defendant LANE is employed at the Defendant JCDPW office located at 13 - 15 Linden Avenue East, Suite 200, Jersey City, New Jersey 07305.

22. That at all times hereinafter mentioned, Defendant SMITH is employed at the Defendant

JCDPW office located at 13 - 15 Linden Avenue East, Suite 200, Jersey City, New Jersey 07305.

23. That at all times hereinafter mentioned, Defendant COPPOLA is employed at the Defendant JCDPW office located at 13 - 15 Linden Avenue East, Suite 200, Jersey City, New Jersey 07305.

## FACTS

### As to Plaintiff TERRI REYNOLDS

24. That on or about 2006, Plaintiff REYNOLDS commenced employment with the Jersey City Incinerator Authority as a seasonal worker.

25. That on or about 2008, Plaintiff REYNOLDS became a full time permanent employee of the Incinerator Authority.

26. On or about April 2016, Defendant JCDPW assumed the responsibilities of the Jersey City Incinerator Authority, which was dissolved.

27. On or about April 2016, Plaintiff REYNOLDS became an employee of Defendant JCDPW and Defendant Jersey City.

28. That at all times mentioned, Plaintiff REYNOLDS was employed by Defendant JCDPW as a laborer and later promoted to a equipment operator position.

29. That at all times mentioned, Defendant LANE was an agent, servant and or employee at Defendant JCDPW.

30. That at all times mentioned, Defendant LANE was an agent, servant and or employee at Defendant Jersey City.

31. That at all times mentioned, Defendant LANE was and is employed as a Supervisor with the Defendant JCDPW.

32. That at all times mentioned, Defendant LANE was a senior and/or superior of Plaintiffs with regard to their employment at Defendant JCDPW.

33. That at all times mentioned, Defendant SMITH was an agent, servant and or employee at Defendant JCDPW.

34. That at all times mentioned, Defendant SMITH was an agent, servant and or employee at Defendant Jersey City.

35. That at all times mentioned, Defendant SMITH was and is employed as a Supervisor with the Defendant JCDPW.

36. That at all times mentioned, Defendant LANE was a senior and/or superior of Plaintiffs with regard to their employment at Defendant JCDPW.

37. During her employment with Defendant JCDPW, Plaintiff REYNOLDS was subjected to gender based discrimination.

38. That at all times herein relevant, Defendant JCDPW treated similarly situated male employees more favorably than Plaintiff REYNOLDS and other female employees.

39. That at all times herein relevant, Plaintiff REYNOLDS was written up by Defendant SMITH for taking a break which was previously approved by her supervisor but similarly situated male employee Martin Valenti was not written up for much more serious deviations such as hitting a pipe in the garage and causing extensive damage to public property.

40. That at all times herein relevant, Defendant SMITH, one of Plaintiff REYNOLDS's supervisors, created a hostile work environment for Plaintiff REYNOLDS by making derogatory comments to Plaintiff REYNOLDS over the radio so that her coworkers can hear the comments, by criticizing her work for no reason when protecting male employees who's performance is much less than Plaintiff REYNOLD's and by denying the supplies she needed

to sufficiently do her job.

41. That at all times herein relevant, Plaintiff REYNOLDS complained about Defendant SMITH and his discriminatory behavior to Jeff Dublin, Deputy Director.

42. That all times herein relevant, after she complained, Plaintiff REYNOLDS faced retaliation from Defendant SMITH, when he attempted to remove REYNOLDS from her department and demote her to a laborer position in another department.

43. On or about June 16, 2016, Plaintiff REYNOLDS complained to Mark Redfield, Former Director of Defendant JCDPW, about the discrimination and disparate treatment she faced indicating that **"As a woman I feel I am not being fairly represented by a highly imbalanced male management team."**

44. On or about June 20, 2016, Plaintiff REYNOLDS submitted a statement to HR regarding her concerns. Plaintiff REYNOLDS indicated that "Nick Torillo, [her] immediate supervisor … told [her] to watch what [she] say[s] on the radio and 'keep it short' because [Defendant SMITH] told him that if [she] say[s] one more thing about him he was going to take it to the next level." Plaintiff REYNOLDS reported this statement to HR as a threat by Defendant SMITH.

45. On or about October 13, 2016, Defendant JERSEY CITY, through Human Resources employee Tamara Brown, responded to Plaintiff REYNOLDS's complaint indicating that "no inappropriate behavior took place". Although the matter was supposed to be referred for mediation, this never occurred.

46. That at all times herein relevant, Plaintiff REYNOLDS was forced to continue working under the supervision of Defendant SMITH and was subjected to a continuous hostile work environment.

47. During her employment with Defendant JCDPW, Plaintiff REYNOLDS was also subjected to sexual harassment and a hostile work environment.

48. That at all times herein relevant, since the beginning of her employment,, Defendant LANE expressed a personal interest in Plaintiff REYNOLDS and would make lewd comments and inappropriately touch Plaintiff REYNOLDS on a regular basis. By way of a few examples:

   a. Defendant LANE would say in front of Ron Hill [Mechanic], "look at [Terri], she has a nice body", "she has a full figured body";

   b. Defendant LANE would say in front of other employees, "I just want to eat [Terri]";

   c. Defendant LANE would say in front of Victor Negron [Superintendent of Sanitation] ("Mr. Negron"), "I am going to get one of [Terri]'s houses";

   d. Defendant LANE would say to Plaintiff REYNOLDS "I am going to marry you, Terri", "I like your hair", "I like when you wear your hair like this".

   e. Defendant LANE would slap Plaintiff REYNOLDS's buttocks and touch her hair on a regular basis.

   f. Plaintiff REYNOLDS would complain to Defendant LANE that her touching and comments made Plaintiff REYNOLDS uncomfortable, to no avail.

   g. Defendant LANE continued touching Plaintiff REYNOLDS inappropriately, even when her coworkers (e.g. Plaintiff OLIVERY, Christine Pisano ("Ms. Pisano"), Sharon Little (Ms. Little)) suggested that Defendant LANE should stop harassing Plaintiff REYNOLDS.

   h. While Plaintiff REYNOLDS was talking to her coworkers, Defendant LANE would kiss her on her cheek on a regular basis.

49. Defendant LANE would refer to Plaintiff REYNOLDS as "my Terri" on a regular basis,

including, but not limited to the following incidents:

a. When Plaintiff REYNOLDS would sympathize with Ms. Little [coworker], who was also harassed by Defendant LANE, Defendant LANE would get jealous, and say to Plaintiff REYNOLDS, "You were my Terri first!"

b. On June 8, 2017, when Plaintiff REYNOLDS told Defendant LANE that she does not want to be involved in any issues Defendant LANE had with Ms. Little, Defendant LANE hugged Plaintiff LANE and repeatedly said, "You were my Terry first!" Later that day, in the hallway, she again said, "You were my Terri first!"

c. On June 9, 2017, in the garage, Defendant LANE again said, "You were my Terri first!" which Plaintiff REYNOLDS ignored. Defendant LANE then made an announcement over the radio to JCDPW employees, "I just want it to be known: this is my Terri!" which made Plaintiff REYNOLDS very uncomfortable. Plaintiff REYNOLDS feared that other employees, having heard Defendant LANE on radio, would think she was having a relationship with Defendant LANE.

d. On June 12, 2017, while Plaintiff REYNOLDS was sitting on a chair, Defendant LANE straddled her on the chair, while pulling Plaintiff REYNOLDS towards her, saying, "You are my, Terri!" Plaintiff REYNOLDS immediately pushed her off, urging her to stop her inappropriate behavior. Defendant LANE ignored Plaintiff's protests, and proceeded to touch her forehead with her hand. Defendant LANE then hugged Ms. Pisano [coworker] while she was sitting at the desk, saying, "Don't get jealous, Terri! Now I will say: My Christine!"

e. Defendant LANE continued to sexually harass Plaintiff REYNOLDS, inquiring if she could refer to Plaintiff REYNOLDS as "MT", "short for: My Terri", instead.

      f.   Plaintiff REYNOLDS complained to Defendant LANE that she should not call her any names and should not touch her because it all made her feel extremely uncomfortable.

50. That at all times herein relevant, Defendant LANE's unlawful conduct was systematic, and well-known to other employees. She would often grab employees' crotches, and even commented on Ms. Pisano's possible transfer to a different department, saying "Whose dick does she want to suck there?!"

51. That at all times herein relevant, Defendant LANE would openly talk about her "best oral sex experience" at the workplace, next to Plaintiff REYNOLDS, making her feel extremely uncomfortable.

52. That at all times herein relevant, Defendant LANE continued to harass Plaintiff REYNOLDS and create a hostile work environment despite Plaintiff REYNOLDS's protests and complaints to Defendant LANE that she stop.

53. That at all times herein relevant, Plaintiff REYNOLDS was no longer able to tolerate the sexual harassment, hostile work environment and discrimination and complained to Human Resources about Defendant LANE's unlawful actions.

54. In or around April-May 2017, Plaintiff REYNOLDS complained to Jeffrey Dublin [deputy director] that Defendant LANE's lewd comments created a hostile work environment and made her extremely uncomfortable. Mr. Dublin promised to speak to Defendant LANE, but took no remedial action to redress the issue.

55. In or around May 2017, Plaintiff REYNOLDS complained to Mr. Victor Negron [director] that Defendant LANE was creating a hostile work environment at JCDPW and sexually harassing Plaintiff REYNOLDS.  Mr. Negron took no remedial action, and encouraged Plaintiff REYNOLDS to take legal action and send a cease and desist letter like she did in 2009, when

she had been sexually harassed by a coworker.

56. In or around May 2017, Plaintiff REYNOLDS complained to Frank Lamparelli [Supervisor of Dispatch] ("Mr. Lamparelli") that Defendant LANE was sexually harassing her, only to be advised that he did not want to talk about it.

57. In or around May 2017, Plaintiff REYNOLDS complained to Sonya Dublin [manager] that Defendant LANE's was sexually harassing her at the workplace. Ms. Dublin acknowledged that other employees of JCDPW had also previously complained about Defendant LANE and suggested that Plaintiff REYNOLDS to complain to Alexis Inselberg [HR at City Hall].

58. On or about May 21, 2017, Plaintiff REYNOLDS emailed Mayor Steve Fullop, complaining about "sexual assault and harassment in the workplace".

59. At all times herein relevant and throughout her employment with Defendant JCDPW, Plaintiff REYNOLDS shared her complaints of discrimination and sexual harassment with Russell Wallace [Supervisor at Engineering Department], Dannon [coworker], Cesar Serano [coworker] and Joseph Grant [Supervisor of Maintenance].

60. On or about May 15, 2017 and again on June 13, 2017, Plaintiff REYNOLDS sent multiple emails to the Mayor's office, complaining about various incidents of sexual harassment, hostile work environment and retaliation she was was subjected to at Defendant JCDPW.

61. On or about June 12, 2017, Plaintiff REYNOLDS called Amanda Khan, HR representative, and complained about the incident, which took place on the same day where Defendant LANE straddled Plaintiff REYNOLDS in the chair. Ms. Pisano, who witnessed Defendant LANE's inappropriate behavior towards Plaintiff REYNOLDS, confirmed to Ms. Khan the incident.

62. On or about June 12, 2017, a "no-contact order" between Defendant LANE and Plaintiff REYNOLDS was issued but Defendant LANE remained to be Plaintiff REYNOLDS's

superior, and continued to supervise her work at JCDPW.

63. On or about September 8, 2017, Defendant JERSEY CITY, through Human Resources employee Tamara Brown, responded to Plaintiff REYNOLDS's complaint, indicating that "it does not appear that sufficient evidence supports a finding that inappropriate behavior occurred", despite corroborating evidence from witnesses and coworkers.

64. Immediately after filing her formal complaint against Defendant LANE, Plaintiff REYNOLDS faced retaliation from Defendant LANE and Defendant SMITH as well as from coworkers:

    a. On July 4, 2017, Defendant SMITH, who is close friends with Defendant LANE, wrongfully wrote up Plaintiff REYNOLDS and Plaintiff OLIVER alleging that they abandoned their post for more than 2 hours when they had received permission to leave their post to buy something to drink with Defendant SMITH's approval.

    b. On July 4, 2017, Ricky Boyce [Supervisor] asked Plaintiff REYNOLDS if he would also get into trouble for hugging her. Upon information and belief, Defendant LANE was mocking Plaintiff REYNOLDS and her complaints to other coworkers, who started treating Plaintiff REYNOLDS differently after her complaints became common knowledge in the workplace.

    c. On June 14, 2017, Plaintiff REYNOLDS was advised by Carol Pasquale [supervisor of messengers] that Hector Ortiz [deputy director] no longer wants to see her in his office.

65. On or about December 10, 2017, Defendant LANE called Plaintiff REYNOLDS on the radio to come into the office to see her, despite knowing that she has a no contact order in effect, simply to harass Plaintiff REYNOLDS.

66. On January 9, 2018, Plaintiff REYNOLDS was denied the opportunity to work overtime during a snow storm clean up by Defendant LANE, who gave the overtime opportunity to a seasonal

worker instead to Plaintiff REYNOLDS, in retaliation for Plaintiff's complaints.

67. On January 10, 2018, Plaintiff REYNOLDS filed a grievance for the denial of overtime and was called into a meeting with HR and upper management wherein her title was changed from Equipment Operator to Laborer, essentially a demotion in title, though her pay remained the same.

68. On January 19, 2018, during a meeting with HR and management, Plaintiff REYNOLDS was forced to accept the change in the title, at the behest of the Union representatives and upper management or face being moved from her position to work directly with Defendant LANE and be exposed to further harassment and retaliation.

69. That at all times herein relevant, Plaintiff expressed her complaints that she is being retaliated against for filing a grievance and complaining about Defendant LANE. Plaintiff REYNOLDS indicated that even though she is the victim, she was being punished by the Defendants for speaking about the retaliatory actions.

70. That at all times herein relevant, Plaintiff REYNOLDS was awarded the additional hours of overtime pay in response to her grievance but her title was changed from Equipment Operator to Laborer, in retaliation for complaining about Defendant LANE.

71. A causal connection exists between Plaintiff REYNOLDS's complaints of gender discrimination and sexual harassment and the adverse employment action she was subjected to.

72. Defendants' actions and conduct were intentional and intended to harm Plaintiff REYNOLDS.

73. As a result of the Defendants actions, Plaintiff REYNOLDS felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

74. As a result of the Defendants actions, Plaintiff REYNOLDS has suffered economic loss.

75. As a result of the Defendants actions, Plaintiff REYNOLDS suffered severe emotional distress.

76. As Defendants conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages.


*As to Plaintiff LORRAINE OLIVER*

77. That on or about 2007, Plaintiff OLIVER commenced employment with the Jersey City Incinerator Authority as a seasonal worker.

78. That on or about 2008, Plaintiff REYNOLDS became a full time permanent employee of the Incinerator Authority.

79. On or about April 2016, Defendant JCDPW assumed the responsibilities of the Jersey City Incinerator Authority, which was dissolved.

80. On or about April 2016, Plaintiff OLIVER became an employee of Defendant JCDPW and Defendant Jersey City.

81. That at all times mentioned, Plaintiff OLIVER was employed by Defendant JCDPW as a messenger.

82. That at all times mentioned, Defendant LANE was a senior and/or superior of Plaintiff OLIVER with regard to their employment at Defendant JCDPW.

83. During her employment with Defendant JCDPW, Plaintiff OLIVER was subjected to gender discrimination, sexual harassment and a hostile work environment.

84. In or around early 2016, Plaintiff OLIVER was the only woman to work along with numerous male employees. They would often discuss sex-related topics; make lewd comments and share

their sexual experiences with women in her presence. Some of them would even use the bathroom in Plaintiff OLIVER's presence, when they were working in the yard. Plaintiff OLIVER felt extremely uncomfortable working in these conditions, and would often stay in the truck to avoid hearing inappropriate comments.

85. On or around April 2016, Defendant LANE inquired from Plaintiff OLIVER why she was sitting in the truck by herself. When Plaintiff OLIVER advised her that she felt uncomfortable hearing male employees' sex-related discussions, Defendant LANE suggested, "You should listen and learn how to take care of the guys". Plaintiff OLIVER was extremely offended by Defendant LANE's comments, which Defendant LANE would continue to make.

86. In or around April 2015, when Plaintiff OLIVER and Ms. Little [co-worker] were using the bathroom, Defendant LANE walked in and said, "Sharon, I don't know what you are doing here with Lorraine, you cannot have her; I am going to have her, and you can have leftovers". Plaintiff OLIVER was very disturbed by Defendant LANE's sexually implicit comments and expressed her discomfort to Defendant LANE.

87. In or around May 2017, Defendant LANE referred to Plaintiff OLIVER as a "Bitch" in front of Ms. Pasquale, Plaintiff OLIVER's supervisor.

88. At all times herein relevant, Defendant LANE would often say in front of other employees of JCDPW, including Plaintiff OLIVER, "I am gay, I am bisexual, I go both ways".

89. On or about middle of 2017, Defendant LANE stated to Plaintiff OLIVER and other coworkers that Ray Mitchell [Public Works' employee], "can eat trim real good, that's the best I have ever had".

90. That at all times herein relevant, Defendant LANE would harass Plaintiff OLIVER and coworker Ms. Little about Mr. Mitchell, stating "You are messing with my man", "You are

fucking my man".

91. That at all times herein relevant, Plaintiff OLIVER found these comments highly inappropriate for workplace and felt humiliated and embarrassed to continue working in a hostile work environment created by Defendant LANE.

92. That at all times mentioned, Defendant COPPOLA was an agent, servant and or employee at Defendant JCDPW.

93. That at all times mentioned, Defendant COPPOLA was an agent, servant and or employee at Defendant Jersey City.

94. In or around early May 2017, Defendant COPPOLA, also a messenger and Plaintiff OLIVER's coworker, appeared to be watching sexual content on his phone next to Plaintiff OLIVER, and had a noticeable erection as a result.

95. That at all times herein relevant, Plaintiff OLIVER felt very uncomfortable seeing her coworker vividly erect and immediately left the room.

96. That at all times herein relevant, this incident was witnessed by coworker Julio and supervisor Ms. Pasqual.

97. In or around May 2017, Defendant COPPOLA showed his phone to Ms. Pasqual, who inquired why she was shown an inappropriate content. In response, Defendant COPPOLA said, "it's just a woman in her lingerie".

98. On or about May 18, 2017, as Defendant COPPOLA continued to maintain his inappropriate behavior at workplace on multiple separate occasions, Plaintiff OLIVER confronted Defendant COPPOLA about his inappropriate behavior. In response, Defendant COPPOLA ignored Plaintiff OLIVER and continued looking at his phone with an erection, while chewing gum.

99. Upon information and belief, Gloria Santiago, a Municipal Court employee also complained

about Defendant COPPOLA's inappropriate behavior. Defendant COPPOLA would deliver mail to the Municipal Court and had inappropriate interactions with Ms. Santiago and Ms. Pasquale received a complaint about his inappropriate conduct from Stephanie Rivera, EO Officer. Upon information and belief, Ms. Pasquale informed Patrick Stamato, director of Defendant JCDPW about this complaint.

100.     In or around May 2017, Plaintiff OLIVER was no longer able to tolerate the sexual harassment, discrimination and the hostile work environment she was subjected to at Defendant JCDPW, and decided to voice her complaints to upper management.

101.     In or around May 2017, Plaintiff OLIVER first complained to her direct supervisor Ms. Pasquale about Defendant COPPOLA's inappropriate behavior and his visible erection. Ms. Pasquale acknowledged that she also saw it and indicated that she spoke to Defendant COPPOLA about it.

102.     In or around May 2017, several days after speaking to Ms. Pasquale, Plaintiff OLIVER complained to director, Patrick Stamato, about Defendant COPPOLA's noticeable erection stimulated by watching inappropriate content on his phone. Mr. Stamato responded that "stuff like this happens" and that "it will happen to man".

103.     That at all times herein relevant, Mr. Dublin witnessed Plaintiff OLIVER's complaints, as he was present during the meeting. Mr. Stamato also advised her that he was not going to deal "with this shit", and referred Plaintiff OLIVER to HR instead.

104.     In or around May 2017, Plaintiff OLIVER further voiced her concerns to Amanda Khan [EEO Liaison] and Tamara Brown [EEO/AA Specialist].

105.     On May 19, 2017, Plaintiff OLIVER submitted a formal complaint of discrimination, complaining about Defendant COPPOLA's sexual harassment at the workplace.

106.     On September 8, 2017, after almost 4 months after Plaintiff OLIVER submitted her
complaint, she received a boilerplate letter from Tamara Brown, advising her that no evidence
of inappropriate behavior was found despite the fact that Supervisor Ms. Pasquale also
confirmed to HR that she witnessed Defendant COPPOLA with an erection on several
occasions.

107.     That at all times herein relevant, Defendant JCDPW took no remedial action into
Plaintiff OLIVER's complaints about sex/gender discrimination and Defendant COPPOLA
continued to subject Plaintiff to a sexual harassment and hostile work environment.

108.     On or about September 8, 2017, when Plaintiff OLIVER received the letter from Ms.
Brown, effectively denying her complaint, Defendant COPPOLA came into the office while
signing, "I got you". He was aware that Plaintiff's complaint about sexual harassment was
ignored by Defendant JCDPW, and would make fun of Plaintiff while continuing to sexually
harass Plaintiff OLIVER with similar inappropriate actions and comments.

109. That at all times herein relevant, Plaintiff OLIVER is still forced to work in the same environment with
Defendant COPPOLA and be subjected to sexual harassment by him:

   a.   On or about October 20, 2017, Defendant COPPOLA walked into the office area and
        grabbed his crotch and was smiling at Plaintiff OLIVER, while talking to Supervisor
        Ms. Pasquale.

   b.   On or about October 19, 2017, while talking to Supervisor Ms. Pasquale and coworker
        Julio, Defendant COPPOLA said his "front is the best" and said "my nephew wants to
        buy me condoms."

110. That at all times herein relevant, Plaintiff OLIVER tried to avoid being in the same
environment with Defendant COPPOLA and ended up sitting outside in the hall so that she does

not have to interact with him or witness his inappropriate comments and sexual harassment.

111.  On or about November 1, 2017, Plaintiff OLIVER again complained to Tamara Brown, HR representative, about the continued harassment and hostile work environment she was subjected to by Defendant COPPOLA. To date, she has not received any response and Defendant JCDPW has not disciplined Defendant COPPOLA or made any attempts to put an end to the harassment Plaintiff OLIVER has been subjected to.

112.  A causal connection exists between Plaintiff OLIVER's complaints of gender discrimination and sexual harassment and the adverse employment action she was subjected to.

113.  Defendants' actions and conduct were intentional and intended to harm Plaintiff OLIVER.

114.  As a result of the Defendants actions, Plaintiff OLIVER felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

115.  As a result of the Defendants actions, Plaintiff OLIVER has suffered economic loss.

116.  As a result of the Defendants actions, Plaintiff OLIVER suffered severe emotional distress.

117.  As Defendants conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of LAD)

118.     Plaintiffs hereby repeat and reallege the preceding paragraphs as though they were fully set forth herein.

119.     By the actions described above, among others, Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., by subjecting Plaintiffs to sexual harassment and discriminating against the Plaintiffs because of their gender / sex.

120.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct, Plaintiffs have suffered and continues to suffer harm for which they are entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION
### (Hostile Work Environment in Violation of LAD)

121.     Plaintiffs hereby repeat and reallege the preceding paragraphs as though they were fully set forth herein.

122.     By the actions described above, among others, Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., by subjecting Plaintiffs to a hostile work environment because of their gender / sex.

123.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct, Plaintiffs have suffered and continues to suffer harm for which they are entitled to an award of monetary damages and other relief.

## THIRD CAUSE OF ACTION
### (Retaliation in Violation of LAD)

124.     Plaintiffs hereby repeat and reallege the preceding paragraphs as though they were fully set forth herein.

125.     By the actions described above, among others, Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., by retaliating against Plaintiffs for their complaints of sexual harassment and discrimination.

126.     Defendants engaged in unlawful employment practices prohibited by the New Jersey Law Against Discrimination by retaliating against Plaintiffs as a result of Plaintiffs' opposition to the Defendants' unlawful employment practices.

127.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct, Plaintiffs have suffered and continues to suffer harm for which they are entitled to an award of monetary damages and other relief.

## FOURTH CAUSE OF ACTION
### (Discrimination in Violation of Title VII)

128.     Plaintiffs hereby repeat and reallege the preceding paragraphs as though they were fully set forth herein.

129.     By the actions described above, among others, Defendants have discriminated against Plaintiffs because of their gender / sex, in violation of Title VII.

130.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiffs have suffered and continues to suffer harm for which they are entitled to an award of monetary damages and other relief.

## FIFTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of Title VII)

131.     Plaintiffs hereby repeat and reallege the preceding paragraphs as though they were fully set forth herein.

132.     By the actions described above, among others, Defendants have discriminated against Plaintiffs and created a hostile work environment because of their gender / sex, in violation of Title VII.

133.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiffs have suffered and continues to suffer harm for which they are entitled to an award of monetary damages and other relief.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

134.      Plaintiffs hereby repeat and reallege the preceding paragraphs as though they were fully set forth herein.

135.      By the actions described above, among others, Defendants have retaliated against Plaintiffs in violation of Title VII for engaging in protected activity.

136.      As a direct and proximate result of Defendants' unlawful and discriminatory conduct, Plaintiffs have suffered and continues to suffer harm for which they are entitled to an award of monetary damages and other relief.

## FIFTH CAUSE OF ACTION – PUNITIVE DAMAGES

137.      The Plaintiffs repeat, reiterate, reallege and incorporates by reference all the allegations contained in the preceding paragraphs as if more fully set forth herein at length.

138.      That at all times hereinafter mentioned, Defendants knew that their actions constituted unlawful discrimination and unlawful retaliation in violation of the law.

139.      That at all times hereinafter mentioned, Defendants acted with malice or reckless disregard and/or with the intention to violation of the law.

140.      As a result of the foregoing, Plaintiffs seeks declaratory relief, compensatory damages and punitive damages, together with reasonable attorneys' fees, costs of this action, pre-judgment and post-judgment interest, and other appropriate relief pursuant to the Title VII and New Jersey Law Against Discrimination.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the Court enter judgment in Plaintiffs' favor and against Defendants, containing the following relief:

A.   A declaratory judgment that the actions, conduct and practices of defendants complained of herein violate the laws of the United States and the State of New Jersey.

B.   An order directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

C.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiffs for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority, Medical and Dental benefits and other benefits of employment;

D.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for loss of benefits, promotions, raises and opportunities;

E.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages/including but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional and psychological pain and suffering, emotional and psychological distress and the physical manifestations caused;

F.   An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate plaintiffs for harm to her professional and personal reputation and loss of career fulfillment;

G.   An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiffs in an amount to be determined at trial, plus prejudgment interest;

H.   An award of punitive damages;

I.    An award of costs that plaintiff has incurred in this action, as well as plaintiffs' reasonable attorneys' fees to the fullest extent permitted by law; and

J.   Such other and further relief as the Court may deem just and proper.

Dated: February 1, 2018
          New York, New York

                                        Respectfully Submitted

                                        AKIN LAW GROUP PLLC

                                        */s/ Gulsah Senol*

                                        _____
                                        By: Gulsah Senol (GS5640)
                                        45 Broadway, Suite 1420
                                        New York, New York 10006
                                        Telephone:  (212) 825-1400
                                        Facsimile:   (212) 825-1440
                                        gulsah@akinlaws.com