Not for Publication

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **TERRI REYNOLDS and LORRAINE OLIVER,** | Civ. No. 2:18-1418 |
| **Plaintiffs,** |  |
| **v.** | **OPINION** |
| **JERSEY CITY DEP'T OF PUB. WORKS,** *et al.*, |  |
| **Defendants.** |  |

**JOHN MICHAEL VAZQUEZ, U.S.D.J.**

In this employment discrimination action, Plaintiffs Terri Reynolds and Lorraine Oliver allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 *et seq.* ("LAD"). Defendants Jersey City Department of Public Works, City of Jersey City, Kip Smith, Shella Lane, and Gerrardo Coppola (collectively, "Defendants") move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint. The Court reviewed all submissions made in support of the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, the motion is **GRANTED IN PART AND DENIED IN PART**.

# I.  BACKGROUND[1]

The Jersey City Department of Public Works ("JCDPW") is a municipal agency of the City of Jersey City ("City") (collectively, "City Defendants"). Compl. ¶ 14, ECF No. 1. At all relevant times, Plaintiffs both worked at JCDPW, Reynolds as a laborer and equipment operator, and Oliver as a messenger. *Id.* ¶¶ 27–28, 80–81. Defendants Smith, Lane, and Coppola are also JCDPW employees. *Id.* ¶¶ 21–23. Smith and Lane are supervisory employees. *Id.* ¶¶ 31–32, ¶¶ 35–36. Like Oliver, Coppola works as a messenger, but he holds no supervisory position over Plaintiffs. *Id.* ¶ 94.

The Complaint is not a model of clarity.  For example, the Complaint often alleges "at all times herein relevant," without providing at least a good faith time estimate.  *See, e.g.*, ¶¶ 38-42, 48, 50-53.  Similarly, the Complaint unfortunately uses conclusory wording as to critical allegations.  *See, e.g.*, ¶40 (claiming that Smith made "derogatory comments" on some unspecified date without providing any description of what the alleged derogatory comments were).  With these limitations in mind, the Court reviews the Complaint's allegations.

## A.  The Allegations Against Kip Smith

As Reynolds' supervisor, Smith allegedly made "derogatory comments to [her] over the radio so that her coworkers can hear the comments, [] criticiz[ed] her work for no reason when protecting male employees who's [*sic*] performance is much less than [hers]" and denied her necessary work supplies. *Id.* ¶ 40. In one instance, Smith wrote Reynolds and Oliver up for abandoning their post for more than two hours even though he gave them permission to take a break. *Id.* ¶ 64.a. Only Reynolds alleges the write-up was discriminatory because a "similarly

---

[1] The Court draws the following facts from Plaintiffs' Complaint, which are taken as true for purposes of the current motion. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).

situated male employee named Martin Valenti was not written up for much more serious deviations such as hitting a pipe in the garage," *id.* ¶ 39, and the reprimand only occurred after Reynolds complained to JCDPW's Deputy Director about "Smith and his discriminatory behavior," *id.* ¶ 41. Smith then "attempted to remove Reynolds from her department and demote her to a laborer position in another department." *Id.* ¶ 42.

### B. The Allegations Against Shella Lane

At work, Lane "expressed a personal interest in [] Reynolds and would make lewd comments and inappropriately touch [] Reynolds on a regular basis." *Id.* ¶ 48. For example, Lane talked about her "best oral sex experience," commented on Reynolds' physical appearance ("I like when you wear your hair like this"), and repeatedly called Reynolds "my Terri." *Id.* ¶¶ 48, 49, 51. Lane also slapped Reynolds's buttocks, touched her hair, and kissed her on the cheek—one time straddling her on a chair. *Id.* ¶¶ 48–49 Reynolds complained numerous times to JCDPW management, human resources, and the City's Mayor's Office about Lane's workplace conduct. *Id.* ¶¶ 54–61.

Lane "mocked" Reynolds for making complaints. *Id.* ¶ 64.b. In retaliation, Lane denied Reynolds an overtime shift, instead giving the opportunity to a seasonal employee. *Id.* ¶ 66. The next day, Reynolds filed a grievance about the overtime denial and had "a meeting with HR and upper management wherein her title was changed from Equipment Operator to Laborer, essentially a demotion in title, though her pay remained the same." *Id.* ¶ 67.

Oliver alleges Lane made inappropriate or lewd comments toward her, such as telling Oliver she was bisexual and "should listen and learn how to take care of the guys." *Id.* ¶¶ 85, 88. Oliver "felt humiliated and embarrassed to continue working" around Lane. *Id.* ¶ 91.

### C. The Allegations Against Gerrardo Coppola

Coppola is a messenger and Oliver's co-worker. *Id.* ¶ 94. In one instance, Oliver saw Coppola "vividly erect" while using his phone. *Id.* ¶¶ 94–95. Oliver confronted Coppola, but "[he] ignored [her] and continued looking at his phone with an erection." *Id.* ¶ 98. Oliver then complained about Coppola's harassing workplace conduct to JCDPW "upper management," including her direct supervisor, the JCDPW Director, and human resources. *Id.* ¶¶ 100–05.

Four months after submitting her complaint, Oliver received a letter from the City's human resources department finding her complaints unsubstantiated. *Id.* ¶ 106. Around the same time, "Coppola came into the office while signing, 'I got you.'" *Id.* ¶ 108. A month later, Coppola "walked into an office area and grabbed his crotch and was smiling at Plaintiff Oliver." *Id.* ¶ 109. Oliver again complained to the City's human resources department but has yet to receive a response. *Id.* ¶ 111. Further, JCDPW made no attempts to redress Coppola's workplace behavior. *Id.* ¶ 107.

### II. PROCEDURAL HISTORY

Reynolds and Oliver received their Notice of Right to Sue from the Equal Employment Opportunity Commission. *Id.* ¶¶ 7–10. Plaintiffs timely commenced this action against Defendants, raising Title VII and LAD claims for employment discrimination, hostile work environment, retaliation, and punitive damages.[2] Defendants filed this Motion to Dismiss ("Defs.' Mem."), ECF No. 8-1, Plaintiffs Opposed ("Pls.' Mem."), ECF No. 12, and Defendants replied ("Defs.' Reply"), ECF No. 15.

---

[2] Plaintiffs asserted Title VII claims against Smith, Lane, and Coppola but now concede they asserted the Title VII claims against the City Defendants only. *See* Pls.' Mem. at 10.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). "[A]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "But [courts] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James*, 700 F.3d at 679 (citations omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## IV.    DISCUSSION

The Court will first address the Title VII and LAD discrimination and retaliation claims, which gives a plaintiff "the initial burden . . . of establishing a *prima facie* case of discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999) ("Analysis of a claim made pursuant to the LAD generally follows analysis of a Title VII claim"). The Court will then discuss the hostile work environment claims.

### A. Counts I and IV – Discrimination

Defendants argue that neither Plaintiff plausibly pled that they suffered an adverse employment action, thus requiring dismissal of the discrimination claims. Defs.' Mem at 18–21. The Court agrees.

Under Title VII, an employer cannot "discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). LAD prohibits the same. N.J. Stat. Ann. § 10:5-12(a). To sustain a *prima face* case of discrimination, a plaintiff must show: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances that support an inference of discriminatory intent. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999); *Victor v. State*, 4 A.3d 126, 141 (N.J. 2010).

"An actionable adverse employment action is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different job responsibilities, or a decision causing a significant change in benefits.'" *Betts v. Summit Oaks Hosp.*, 687 F. App'x 206, 207 (3d Cir. 2017) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). The action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (citations omitted). An employee's subjective view of an employer's conduct cannot be used to show an adverse employment action. *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992) ("[E]mployment discrimination laws . . . cannot be transformed into a palliative for every workplace grievance, real or imagined.").

Plaintiffs fail to sufficiently plead how Defendants took an adverse employment action against them under circumstances giving rise to an inference of discrimination. The allegations do not reflect "serious and tangible" actions that changed their "compensation, terms, conditions, or privileges of employment." *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir. 1997). That Smith "attempted" to remove Reynolds from her department and also issued her a disciplinary "write-up," that Lane assigned overtime hours to a seasonal worker, and that "upper management" changed her job title—which Reynolds admits resulted in no loss of pay—do not rise to the necessary serious and tangible effect on her employment. *See Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001) (noting plaintiff's two written reprimands are not adverse actions absent showing how the letters "effect a material change in the terms or conditions of his employment"); *Fiorentini v. William Penn Sch. Dist.*, 665 F. App'x 229, 234 (3d Cir. 2016) (finding lateral transfers or job title changes with no modification in the employee's salary or benefits are not adverse actions); *Rivers v. Potter*, No. 05-4868, 2007 WL 4440880, at *7 (D.N.J. Dec. 18, 2007) (finding a single denial of overtime was not an adverse employment action).

Similarly, Oliver fails to adequately allege a serious and tangible change that altered the compensation, terms, conditions, or privileges of her employment. Without more, Lane's "sexually implicit comments," Compl. ¶ 86, and use of "highly inappropriate" language that caused her to feel "humiliated and embarrassed," *id.* ¶ 91, are insufficient to sustain a discrimination claim. Accordingly, Defendants' motion is granted as to Plaintiffs' Title VII and LAD discrimination claims, and these claims are **DISMISSED**.

### B. Counts III and VI – Retaliation

Defendants contend that Plaintiffs failed to plead an adverse employment action or show a causal connection between their complaints and the alleged retaliation. Defs.' Mem. at 22–26. The Court agrees.

Title VII makes it unlawful for an employer to retaliate against an employee who "opposed . . . an unlawful employment practice" or engaged in a protected activity. 42 U.S.C. § 2000e-3(a). LAD also forbids "any person to take reprisals against any person because that person has opposed any practices or acts forbidden under [LAD] or because that person has filed a complaint." N.J. Stat. Ann. § 10:5-12(d). To prevail on a retaliation claim, a plaintiff must put forth a *prima facie* case, showing: (1) she engaged in a protected activity; (2) she suffered an adverse employment action either after or contemporaneous with the protected activity; and (3) there is a causal connection between the two events. *Moore*, 461 F.3d at 340–41 (Title VII); *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 198 (3d Cir. 1996) (LAD).

An adverse employment action in a retaliation context includes not only discriminating actions that materially affect the terms and conditions of employment, but also extends to harms that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations omitted). To show a causal connection to an adverse retaliatory action, a plaintiff must plausibly allege "that her protected activity was a but-for cause of the adverse action taken against her." *Moore v. Sec'y U.S. Dep't of Homeland Sec.*, 717 F. App'x 179, 185 (3d Cir. 2017) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). A court considers a "broad array of evidence" to find a causal link, such as an "unusually suggestive" temporal proximity between the protected activity and adverse action. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d

Cir. 2000). "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (citations omitted).

Reynolds' allegations (*e.g.*, the disciplinary "write-up," being mocked and treated "differently", that Lane assigned overtime hours to a seasonal worker, and that "upper management" changed her job title) fail to sufficiently support an adverse employment action for retaliation purposes. *See, e.g.*, *McKinnon v. Gonzales*, 642 F. Supp. 2d 410, 427 (D.N.J. 2009) (stating that complaints of micromanagement, increased scrutiny, and reprimands regarding lateness "would not, under most circumstances, rise to the level of materially adverse actions," but reassignment of duties and or the imposition of disproportionately heavy discipline may). Moreover, even if the pleaded retaliatory events would have deterred a reasonable person from filing a complaint, Reynolds fails to sufficiently establish a causal connection here, primarily because the timing of certain events (including those that are alleged to be retaliatory) is extremely hard to discern from the Complaint in its current form. As noted, the Complaint alleges that many critical events occurred "at all times herein relevant." At best, as the Court can discern, following one of Reynolds' complaints on June 12, 2017, Compl. ¶ 61, Reynolds is alleging that on July 4, 2017, Smith "wrongfully wrote up" both Reynolds and Oliver and that another supervisor (who is not a named Defendant) asked Reynolds if he would get in trouble for hugging her, *id.* at ¶ 64.

The alleged retaliation against Oliver is even less clear. Oliver makes no plausible allegation that she was subjected to an adverse employment action after filing complaints. Thus, Defendants' motion is granted as to Plaintiffs' Title VII and LAD retaliation claims, and these claims are **DISMISSED**.

### C. Counts II and V – Hostile Work Environment

Defendants argue that Plaintiffs' hostile work environment claims must be dismissed because neither Reynolds nor Oliver sufficiently alleged suffering intentional discrimination because of their gender and, even if they did, the purported misconduct was neither severe or pervasive enough to warrant relief. Defs.' Mem. at 13–18. The Court disagrees in part.

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)). To establish a hostile work environment claim under Title VII or LAD, a plaintiff must show: (1) she suffered discrimination based on a protected class (*e.g.*, gender); (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) a basis to hold the employer vicariously liable. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citation omitted). A LAD hostile work environment claim contains only the first four elements of a Title VII hostile work environment claim. *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (citations omitted). To state a claim, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

Plaintiffs have sufficiently alleged a hostile work environment claim against the City Defendants and their supervisor, Lane, but not against Smith or Coppola. Here, Lane made frequent comments—beyond a mere offensive utterance—that unreasonably interfered with Plaintiffs' work performance. *See Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 215 (3d Cir. 2017) (citation omitted). Lane publicly humiliated Reynolds in front of coworkers (*e.g.*, telling

Reynolds, "I like when you wear your hair like this."), slapped Reynolds' buttocks and hair, and straddled her on a chair. Compl. ¶ 48. Similarly, Lane told Oliver to "listen and learn how to take care of the guys," spoke of sexual habits (*e.g.*, "[A JCDPW employee] can eat trim real good, that's the best I have ever had."), and expressed to Oliver that "I am gay, I am bisexual, I go both ways." *Id.* ¶¶ 88–89. Lane's conduct continued after Plaintiffs complained to the City Defendants' management and human resources personnel. *Id.* ¶¶ 53–58, 61, 101–05, 111. Thus, it is plausible that the City Defendants "knew or should have known of the harassment and failed to take prompt remedial action." *Kunin v. Sears Roebuck and Co.*, 175 F.3d 289, 293–94 (3d Cir. 1999). Plaintiffs thus state a claim against the City Defendants based on Lane's alleged comments and actions.

As to Lane, she can only be held liable under an aiding and abetting theory of liability as to the LAD claim in Count II. "LAD holds individual employees liable for their actions in aiding and abetting violations of a plaintiff's rights." *Lopez-Arenas v. Zisa*, No. 10-2668, 2012 WL 933251, at *10 (D.N.J. Mar. 19, 2012) (citing N.J. Stat. Ann. §10:5-12(e)). But individual liability is confined to supervisory employees. *See Tarr v. Ciasulli*, 853 A.2d 921, 929 (N.J. 2004). "The terms 'supervisor' . . . include[s] not only employees granted the authority to make tangible employment decisions, but also those placed in charge of the complainant's daily work activities." *Aguas v. State*, 107 A.3d 1250, 1271 (N.J. 2015) (citation omitted). Lane is alleged to be a supervisor and the Complaint plausibly makes allegations as to Lane.[3] There is no individual liability under Title VII. *Sheridan v. E.I. DuPont de Neours and Co.*, 100 F.3d 1061, 1077-78 (3d

---

[3] The Complaint, however, did not expressly allege that Lane aided and abetted her employer. Because Plaintiffs are being granted leave to file an amended complaint as to certain counts, it is advisable that they also make explicit their aiding and abetting theory against Lane. In other words, the Complaint does make sufficient factual allegations vis-à-vis Lane and Count II, but the legal theory of aiding and abetting should be express.

Cir. 1996). Plaintiffs, however, conceded the dismissal of Count V (based on Title VII) as to the individual Defendants.

But as to Reynolds' allegations that Smith made unspecified derogatory comments over the radio that other coworkers could hear, "criticiz[ed] her work for no reason when protecting male employees who's [*sic*] performance is much less than [her's] and den[ied] the supplies she needed to sufficiently do her job," Compl. ¶ 40, those allegations lack sufficient specificity to show how the claimed incidents of harassment were based on her gender.[4]

As to Coppolla, he is not alleged to be a supervisor. As a result, Count II as well as all other LAD claims are **DISMISSED** as to Coppola because he is neither Reynolds nor Oliver's supervisor. *See Tarr*, 853 A.2d at 929.[5]

### D. Punitive Damages

Finally, Defendants seek to dismiss Plaintiffs' request for punitive damages. This is generally premature. But to the extent the Court has found that Plaintiffs failed to state a Title VII or LAD claim, the punitive damages claims tethered to those causes of action are also **DISMISSED**.

---

[4] The Court, however, agrees with Plaintiffs that the comments themselves do not have to expressly refer to Reynolds' gender or be sexual in nature. Instead, the improper conduct or comments must be due to Reynolds' gender. *Lehman v. Toys R Us, Inc.*, 132 N.J. 587, 602 (1993) ("[T]he harassing conduct need not be sexual in nature; rather, its defining characteristic is that the harassment occurs because of the victim's sex." (citation omitted)).

[5] Oliver attempts to assert against Coppola a common law intentional infliction of emotional distress claim, which appeared nowhere in the Complaint. Pls.' Mem. at 14–15. Instead, Oliver first alleged the common law claim in her motion papers, running contrary to well-settled law "that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted).

## V.      LEAVE TO AMEND

Absent inequity or futility, courts must allow plaintiffs leave to amend a complaint. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Thus, the above-discussed claims are **DISMISSED WITHOUT PREJUDICE** except (1) the Title VII claims alleged in Counts IV, V, and VI are **DISMISSED WITH PREJUDICE** as to Smith, Lane, and Coppola because Plaintiffs concede the Title VII claims were made only against the City Defendants; (2) the LAD claims alleged in Counts I, II, and III are **DISMISSED WITH PREJUDICE** as to Coppola because, as a non-supervisory employee, he cannot be held liable as an aider and abettor; (3) as to Lane, the Motion to Dismiss is **DENIED** with respect to the LAD hostile work environment claim alleged in Count II; (4) as to the City Defendants, the Motion to Dismiss is **DENIED** with respect to the LAD and Title VII hostile work environment claims alleged in Counts II and V.

## VI.      CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' Complaint is **GRANTED IN PART AND DENIED IN PART**. An appropriate Order follows.


Dated: January 4, 2019                          _s/ John Michael Vazquez_____
                                                **John Michael Vazquez, U.S.D.J.**